IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **QUENTIN JONES,** | ) CIVIL ACTION NO. 2:21-cv-746 |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| **WALMART INC.,** | ) |
| | ) |
| **Defendant.** | ) |

**COMPLAINT**

## I.  PRELIMINARY STATEMENT

By this action, Plaintiff, Quentin Jones, seeks lost wages and benefits, compensatory and punitive damages, costs, and attorney's fees because Defendant, Walmart Inc., failed to accommodate his disability and terminated his employment because of his disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112.  Plaintiff seeks the same remedies as a result of Defendant terminating him in retaliation for his protected activity, in violation of the American with Disabilities Act of 1990, 42 U.S.C. § 12203.  Additionally, Plaintiff seeks lost wages and benefits, liquidated damages, costs, and attorney's fees because Defendant interfered with his FMLA rights, in violation of 29 U.S.C. § 2615(a)(1).  Finally, Plaintiff seeks lost wages and benefits, compensatory and punitive damages, costs, and attorney's fees because Defendant wrongfully discharged him in violation of Pennsylvania's public policy.

1

## II. JURISDICTION

1. This Court has jurisdiction of this matter by virtue of 28 U.S.C. § 1331, in that this is a civil action wherein the matter in controversy arises under the laws of the United States.

2. This Court also has jurisdiction of this matter under 28 U.S.C. § 1367, in that this is a civil action of which this Court has original jurisdiction, and one of Plaintiff's claims is brought under Pennsylvania state law, which is related to the federal claims in this action in that they form part of the same case or controversy under Article III of the Constitution of the United States.

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that this is a civil action in which jurisdiction is not founded solely on diversity of citizenship, and the acts constituting a substantial part of the events and omissions giving rise to the claims occurred in the Western District of Pennsylvania.

4. On October 19, 2020, Plaintiff filed a Charge of Discrimination with the EEOC against Defendant. On May 11, 2021, the EEOC issued a Notice of Right to Sue to Plaintiff.

## III. PARTIES

5. Jones is an adult individual who resides at 108 Harriet Street, Rankin, PA 15104. At the time of the incident complained of in this lawsuit and presently, he was and is a citizen of the Commonwealth of Pennsylvania and the United States of America.

6. Walmart Inc. is a multinational retail corporation, which is incorporated in Delaware and has its headquarters at 702 SW 8th Street, Bentonville, AR 72712.

## IV. STATEMENT OF CLAIM

7. On September 8, 2017, Jones began working as an Optician at Defendant's store located at 2351 Century Drive, West Mifflin, PA 15122.

8. On September 23, 2019, Jones injured his right knee, ankle, and Achilles tendon at work while stepping on a coworker's stool.

9. He immediately reported the injury through a "code white" and made a statement to his managers Kendrick (last name unknown) and Alex (last name unknown), who met with him at the Vision Center.

10. Jones then went to the Mercy Hospital ER for treatment of his injury.

11. Jones's discharge instructions from the ER stated that he could return to work after two weeks and after a follow-up evaluation with a physician.

12. Following this injury, Jones was substantially limited in walking and standing, among other major life activities.

13. Unable to work, Jones notified Defendant of his absence, using its required call-off procedures.

14. On September 25, 2019, Jones contacted Sedgwick, Defendant's third-party administrator. Defendant required its employees to contact Sedgwick for absences extending beyond two days.

15. He spoke to a Sedgwick representative named Nicole (last name unknown), informing her of the nature and location of his injury, the ER's work restrictions, and an upcoming appointment with an orthopedic surgeon.

16. In response, Nicole instructed Jones to file a workers' compensation claim and said that he had to see a physician approved by Defendant's insurance carrier.

17. Nicole made no mention of Jones's FMLA leave eligibility or the possibility of an ADA accommodation.

18. Pursuant to Nicole's instruction, Jones filed a workers' compensation claim and began treating as instructed by Defendant's insurance carrier.

19. On September 30, 2019, Jones went to an appointment at Concentra and treated with Sandi L. Hellgren, PA-C. At that appointment, he received discharge instructions to return to work with restrictions, including that he remain seated for 95% of his shift.

20. On October 2, 2019, Defendant informed Jones that it could not accommodate his restrictions.

21. Not permitted by Defendant to return to work, Jones remained at home and continued to receive medical treatment. He also remained in contact with Defendant in order to keep it apprised of his recovery and continued to express his desire to return to work.

22. Jones had a follow-up appointment at Concentra on October 4, 2019 and received the same medical restriction—remain seated for 95% of his shift.

23. Concentra also referred Jones to see Dr. Mark Lesh.

24. Dr. Lesh treated Jones on November 27, 2019, and, as before, Jones was released to return to work with restrictions. Dr. Lesh limited him to sedentary work.

25. On approximately December 6, 2019, Laura (last name unknown), an HR employee at Defendant's location where Jones worked, informed Jones that Defendant would honor his accommodation requests, changing its original position.

26. According to Laura, Jones was to report to work on December 9, 2019 because Defendant would have in place the necessary accommodations to ensure he could perform his job at a sedentary level.

27. On December 9, 2019, when Jones reported for work, it was immediately clear that Defendant did not have in place the accommodations as it had promised. In fact, Jones's manager Allison (last name unknown) was surprised to see him show up for work that day.

28. Additionally, Jones could not log into Defendant's system because his credentials had expired during his absence. Once he was able to gain access that day, he saw that Defendant did not place him on the schedule going forward.

29. Despite Defendant's failure to accommodate him, Jones worked his entire shift, and by the end of his shift, his knee and ankle were swollen.

30. Jones called off work on December 10-11, 2019 due to the continued swelling in his knee and ankle.

31. On December 12, 2019, Jones again called off and was treated by Dr. Lisa Blackrick, an orthopedic surgeon.

32. Dr. Blackrick provided him with discharge instructions that included the same sedentary duty limitation imposed by Dr. Lesh.

33. Following that appointment, on the same day, Jones contacted Alex (last name unknown), a Store Manager at Defendant's West Mifflin location, to inform Alex of Jones's work restrictions from Dr. Blackrick.

34. Alex told Jones that he needed to notify Laura of his work restrictions, which Jones did later that day.

35. During his conversation with Laura, she instructed him to fax her a note from Dr. Blackrick that memorialized his work restrictions.

36. Defendant required this note despite the medical release he provided to it on November 27, 2019, which contained the same restrictions.

37. Regardless of the redundancy, Jones faxed the information from Dr. Blackrick to Laura on December 13, 2019.

38. Jones did not hear anything from Defendant until December 17, 2019. On that day, Laura contacted him and accused him of not showing up for scheduled days of work.

39. In response, Jones informed Laura that he was never given a schedule and that Defendant failed to honor his work restrictions when he returned on December 9, 2019.

40. Laura also stated that the note that Jones faxed on December 13, 2019 was insufficient.

41. Jones questioned Laura why she waited four days to tell him of the insufficiency and said that he would provide a more detailed note.

42. Following his call with Laura, Jones contacted Dr. Blackrick and had a new note faxed to Laura.

43. On December 18, 2019, Jones filed a Claim Petition for Workers' Compensation.

44. On December 20, 2019, Laura informed Jones that he was on the schedule for December 21, 2019.

45. Upon his return, Defendant provided him with additional breaks as an accommodation but did not provide him with a new chair, despite Laura's assurance that one would be provided.

46. Jones worked his shifts as scheduled on December 21, 23, and 26, 2019 without the new chair and pushed through the swelling in his knee that occurred as a result.

47. At the end of his shift on December 26, 2019, a fellow associate (name unknown) informed Jones that HR had requested to meet with him.

48. Jones met with Bobby Burke, one of Defendant's Salary Managers, and Allison, who informed Jones that he was being fired due to too many occurrences, which is a term that Defendant uses to refer to points that accumulate under Defendant's attendance policy.

49. Defendant cited absenteeism even though Jones was never informed of his FMLA rights and requested multiple accommodations in order to return to work, which were not honored.

50. Additionally, Defendant fired Jones just over a week after he filed his Claim Petition for Workers' Compensation.

## V. CLAIMS FOR RELIEF

### COUNT I – VIOLATION OF ADA – TERMINATION

51. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

52. Defendant has intentionally and willfully engaged in a series of unlawful acts in discriminating against Plaintiff with respect to compensation, terms, conditions, or privileges of employment in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112.

53. Defendant's decision to terminate Plaintiff was induced by its intent to discriminate against Plaintiff on the basis of his disability and/or perceived disability.

54. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

### COUNT II – VIOLATION OF ADA – RETALIATION

55. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

56. Defendant intentionally retaliated against Plaintiff, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12203.

57. Defendant's decision to terminate Plaintiff was induced by its intent to retaliate against Plaintiff because of his protected activity.

58. Plaintiff has been directly harmed as a result of these violations as is fully set forth above.

### COUNT III – VIOLATION OF ADA – FAILURE TO ACCOMMODATE

59. Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

60. Defendant failed to accommodate Plaintiff's disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112.

61. Plaintiff is an individual with a disability because he suffers from an impairment that substantially limits one or more major life activities.

62. Plaintiff informed Defendant of that disability and requested reasonable accommodations.

63. Defendant failed to engage in the interactive process and failed to accommodate Plaintiff's disability, despite the availability of reasonable accommodations for Plaintiff's disability.

64. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

### COUNT IV – VIOLATION OF FAMILY AND MEDICAL LEAVE ACT – INTERFERENCE

65. Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

66. Defendant interfered with Plaintiff's FMLA rights, in violation of 29 U.S.C. § 2615(a)(1).

67. Plaintiff has been directly harmed as a result of these violations as is fully set forth above.

## COUNT V – VIOLATION OF PENNSYLVANIA'S PUBLIC POLICY – TERMINATION

68. Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

69. Defendant has intentionally and willfully engaged in a series of unlawful acts in violation of Pennsylvania's public policy.

70. Defendant's decision to terminate Plaintiff was induced by its intent to retaliate against him for filing a claim under Pennsylvania's Workers' Compensation Act.

71. Plaintiff has been directly harmed as a result of these violations as is fully set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court will:

(a) Assume jurisdiction herein;

(b) Declare Defendant's conduct to be unlawful and an intentional violation of Plaintiff's rights;

(c) Award Plaintiff wage loss damages, including back pay, front pay, and lost future earnings, damages associated with the increased tax burden of any award, and lost fringe and other benefits of employment;

(d) Award Plaintiff liquidated damages under the FMLA;

(e) Award Plaintiff compensatory and punitive damages under the ADA and for Defendant's violation of Pennsylvania's public policy;

(f) Award Plaintiff pre- and post-judgment interest;

(g) Award Plaintiff costs and attorney's fees; and

(h) Grant such other relief as the Court deems just and appropriate.

**JURY TRIAL DEMANDED**

Respectfully Submitted,

*Nicholas Kennedy*
Nicholas W. Kennedy
PA ID No. 317386
QuatriniRafferty
550 East Pittsburgh Street
Greensburg, PA 15601
Phone: 724-837-0080
Fax: 724-837-1348